UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ANTONIO ARZOLA,                  )
        Plaintiff               )
                                 )
             v.                  )   C.A. No. 13-cv-30022-MAP
                                 )
CAROLYN W. COLVIN,               )
Acting Commissioner, Social )
Security Administration,         )
        Defendant               )


MEMORANDUM AND ORDER REGARDING PLAINTIFF'S
MOTION FOR JUDGMENT ON THE PLEADINGS AND
DEFENDANT'S MOTION TO AFFIRM COMMISSIONER'S DECISION
(Dkt. Nos. 17 & 25)

April 24, 2014

PONSOR, U.S.D.J.

I.  INTRODUCTION

Plaintiff, Antonio Arzola, appeals the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of the Social Security Administration, denying his application for disability benefits.  Defendant has moved to affirm her decision.  The issues are, first, the weight to be accorded to the opinion of Plaintiff's therapist and, second, the inclusion of a prior job that has an exertional level outside of Plaintiff's residual functioning capacity.  For the reasons stated below, the court will deny Plaintiff's

motion and allow Defendant's motion.

## II.  FACTUAL BACKGROUND

At the time of his initial application, Plaintiff was a 51-year-old male (d.o.b. 09/27/1960) claiming disability due to human immunodeficiency virus (HIV), hepatitis C, low back pain, high blood pressure, anxiety, and depression.  He attended high school until 10th grade and then obtained a GED.  Plaintiff previously worked doing sewing on a production line and as a warehouse worker.  He was incarcerated from 2006 until 2010 for drug-related crimes. (A.R. 307.)

Because Plaintiff's challenge to the ALJ's decision is limited to her determinations with respect to Plaintiff's mental health, the court will focus on that area of the evidence.  The following recitation of facts is drawn from the Administrative Record.  (SSA Admin. R. of Soc. Sec. Proceedings, Dkt. No. 14 (hereinafter "A.R.").)

## A.  Medical Background: Mental Examinations

On May 20, 2010, Plaintiff sought treatment for his mental health issues at the River Valley Counseling Center. Catherine Gressler, a licensed mental health counselor,

conducted his initial evaluation and prepared his treatment plan. (A.R. 306-10.) As part of the initial intake, Ms. Gressler reported on the "Brief Psychiatric Rating Scale" section of the intake form that Plaintiff had extremely severe symptoms of somatic concern,[1] anxiety, depression, and guilt, as well as moderate symptoms of suicidality and mild symptoms of tension. (A.R. 306.) Later on the same form, however, Ms. Gressler indicated that Plaintiff's symptoms of depression and anxiety were only moderate and that he experienced symptoms of post-traumatic stress disorder (PTSD) in the form of nightmares. (A.R. 310.) She noted that Plaintiff was well groomed, had a cooperative attitude, and appeared calm with an appropriate affect. She rated his thought process and judgment as intact, with no memory problems. (Id.) She diagnosed Plaintiff as suffering a depressive disorder and poly-substance abuse in remission and assigned him a Global Assessment of Functioning ("GAF") score of 45.[2] (A.R. 301.)

_____

[1] Somatic concern means worry for one's health. See Stedman's Medical Dictionary 1634 (26th ed. 1995).

[2] A GAF score between 41 and 50 signifies serious symptoms or any serious impairment in social, occupational,

3

On August 26, 2010, Ms. Gressler completed a form on Plaintiff's behalf for the Massachusetts Rehabilitation Commission Disability Determination Services.  (A.R. 335-338.)  She identified Plaintiff's psychiatric diagnosis as PTSD and polysubstance dependence, and she described his mental status at that time as "severely depressed, guilty, anhedonic."  (A.R. 336.)  With respect to his daily activities and interpersonal relationships, Ms. Gressler stated that Plaintiff could take care of himself independently, but that he could "not focus sufficiently to read a newspaper" and he "requires assistance with complex serial tasks."  (Id.)

Ms. Gressler also reported that Plaintiff could not sustain his concentration and attention for extended periods because his thoughts distracted him.  However, in response to the form's query about Plaintiff's memory, Ms. Gressler answered that his ability to remember instructions and work-related tasks was within normal limits ("WNL").  (A.R. 336.)  She remarked that Plaintiff would handle routine stress

---

or school functioning.  Diagnostic & Statistical Manual of Mental Disorders (DSM-IV) 34 (American Psychiatric Ass'n, 4th ed. 2000).

poorly because he "has low frustration tolerance and is irritable," but his ability to get along with others in both work and home situations was within normal limits.  (A.R. 337.)

Though Plaintiff attended psychotherapy twice a month and had been referred for a psychopharmacology medication evaluation, Ms. Gressler did not conduct any psychological testing.  She opined that Plaintiff's prognosis was good and that she did not expect the duration of his episode of significant impairment to last beyond 12 to 18 months.  (A.R. 338.)  Because she was not an M.D. or a licensed psychologist, Ms. Gressler's report was co-signed by Dr. Donna Cohen, as required by the instructions on the Massachusetts Rehabilitation Commission's form.  (A.R. 338.)

In September 2010, Ms. Gressler filled out another disability assessment form for Plaintiff.  She listed his diagnosis as severe depression, marked by anhedonia, sleep disturbance, feelings of guilt or worthlessness, and thoughts of suicide.  (A.R. 618.)  She found him to have marked restrictions in the activities of daily living and in maintaining social functioning, as well as deficiencies in

concentration, persistence, and pace. (A.R. 619.)

Sometime later, Ms. Gressler completed a third assessment of Plaintiff's mental impairments, in which she identified Plaintiff's diagnosis as PTSD. (A.R. 564.) She listed his depression under "clinical findings" and labeled his prognosis as "guarded." (Id.) Additionally, Ms. Gressler indicated that Plaintiff had marked limitations in his activities of daily living and moderate difficulties in maintaining social function and concentration, persistence, or pace. (A.R. 565-66.) Finally, she opined that Plaintiff's impairments would cause him to be absent from work more than four days per month. (Id.)

On May 18, 2011, Ms. Gressler revisited Plaintiff's treatment plan. (A.R. 548-53.) She reiterated the diagnoses as major depressive disorder and polysubstance dependence and noted that his GAF of 45 remained unchanged throughout the year. Ms. Gressler noted Plaintiff's pleasant and cooperative attitude, coupled with his engagement in the "therapeutic alliance," as his strengths, and emphasized his severe medical issues as his barriers to treatment. (A.R. 548.) On the "Brief Psychiatric Rating

Scale," she rated his anxiety and depression as improved --
now "moderate" instead of "extremely severe." (A.R. 553.)
Plaintiff's emotional withdrawal and tension were "very
mild." (Id.) Altogether, Ms. Gressler treated Plaintiff
twice per month from 2010 through 2011.[3] (A.R. 564.)

In addition to his sessions with Ms. Gressler,
Plaintiff also saw Sharlene Hernandez, APRN, for medication
management approximately every two months during this time
period. (A.R. 380-83, 496-97, 540-47, 554-62.) Plaintiff
first visited Ms. Hernandez for a "Psychopharm Diagnostic
Assessment" on August 16, 2010. Ms. Hernandez found
Plaintiff's dress and grooming, speech, and thought process
to be within normal limits. (A.R. 496.) She marked his
judgment, insight, and concentration as fair and his eye
contact and rapport as good. Plaintiff's depressive
symptoms were moderate, though he experienced tearfulness,
reduced interest, and psychomotor retardation. His symptoms
of anxiety were also moderate most of the time, with some

_____

[3] Other than the above-described treatment records,
which summarize Ms. Gressler's impressions, there are no
other summaries or documents pertaining to the bi-monthly
counseling sessions with Ms. Gressler in the administrative
record.

nightmares, intrusive memories, and panic attacks.  (Id.)
Ms. Hernandez prescribed psychopharmacological medications
and instructed Plaintiff to return in six weeks.

Plaintiff returned for medication management roughly
every eight weeks for the following year.  Most of Ms.
Hernandez's observations from the previous visit were either
unchanged or improved.  For example, on October 5, 2010, she
found Plaintiff to be "full range/appropriate" with respect
to his affect, and his judgment, insights, and concentration
improved from fair to good.  (A.R. 380.)  Ms. Hernandez
indicated that both Plaintiff's depressive and anxiety
symptoms were mild to moderate.

Though Plaintiff's condition fluctuated between the
moderate and mild symptom range, his presentation with
respect to affect, cognitive functioning, and thought
process remained largely unchanged throughout his
appointments in October 2010 (A.R. 560-61), December 2010
(A.R. 558-59), February 2011 (A.R. 556-557), April 2011
(554-55), June 2011 (A.R. 546-47), August 2011 (A.R. 543 &
545), October 2011 (A.R. 542 & 544), and December 2011 (A.R.
540-41).  In this period, his biggest challenges were his

difficulties falling asleep, the multiple awakenings a
night, his panic attacks, nightmares, and intrusive memories
-- for which Ms. Hernandez adjusted his medications several
times -- as well as his increased guilt and anxiety
associated with a few relapses in his substance dependence.
(A.R. 559.)  Despite these setbacks, Plaintiff never
reported, and Ms. Hernandez never assessed, depression or
anxiety symptoms greater than moderate; moreover, Plaintiff
consistently denied ever having suicidal thoughts.[4]

B.    State Agency Opinions

On October 26, 2010, as part of a consultative
examination requested by the Massachusetts Rehabilitative
Commission, Leon Hutt, Ph.D., examined Plaintiff.  (A.R.
344-46.)  Dr. Hutt reported that Plaintiff presented as
polite and cooperative, fully alert and well oriented to
time and place, and with clear, relevant, and coherent

_____

[4]  The record also reflects that Plaintiff received
treatment from Dr. Claudia Martorell, MD, for management of
his HIV and hepatitis C, as well as substance addiction.
For each visit, Dr. Martorell found that Plaintiff was
oriented to time, place, and person; had mood and affect
appropriate for the setting; maintained a normal attention
span and concentration; and appeared not to be in acute
distress.  (A.R. 394-404, 569-81.)  The doctor also noted
Plaintiff's general compliance with his treatment programs.

speech.  However, the doctor found Plaintiff's attention
capacity to be mildly impaired and quantitative reasoning to
be well below average.  Further, he estimated that Plaintiff
performed in the low average range of adult intellectual
function.  (A.R. 345.)  Dr. Hutt diagnosed Plaintiff with
opioid dependence in full remission and major depressive
disorder, recurrent, while assigning him a GAF score of 65.[5]
(A.R. 346.)  Finally, though he thought Plaintiff was
competent to manage his own finances, Dr. Hutt doubted that
Plaintiff "could psychologically tolerate stressors
associated with work or employment."  (Id.)

        On November 2, 2010, Ginette Langer, Ph.D., completed a
consultation form, based on Plaintiff's treatment records at
River Valley, as well as Dr. Hutt's evaluation, regarding
Plaintiff's disability application.  (A.R. 347-59.)  She
assessed Plaintiff as having mild restrictions in the
activities of daily living and in maintaining social
function and as having moderate difficulties in maintaining
concentration, persistence, or pace.  (A.R. 357.)  After

        _____

        [5]  A GAF score between 61 and 70 signifies mild
symptoms or some difficulty in social, occupational, or
school functioning.  DSM-IV 34.

reviewing the application, Dr. Langer specifically noted

that, though Plaintiff's claim of depression was supported

by the records, Ms. Gressler's PTSD diagnosis differed from

the major depressive disorder diagnosis and was not

consistently supported by the medical providers. (A.R.

359.)

On the "Mental Residual Functional Capacity Assessment"

completed by Dr. Langer, she found Plaintiff only moderately

limited in the areas of ability to carry out detailed

instructions, to maintain attention and concentration for

extended periods, and to interact appropriately with the

general public. (A.R. 375-76.) Additionally, Dr. Langer

marked Plaintiff as moderately limited in the "ability to

complete a normal workday and workweek without interruptions

from psychologically based symptoms and to perform at a

consistent pace without an unreasonable number and length of

rest periods." (A.R. 376.) In sum, Dr. Langer concluded

that Plaintiff had no significant limitations.[6] (A.R. 377.)

---

[6] Plaintiff's file appears to have been sent out twice
for case analysis. On February 1, 2011, Dr. Celeste N.
Derecho, Ph.D., looked at Plaintiff's medical records and
stated that after reviewing all the evidence, she agreed
with Dr. Langer's assessment and conclusion. (A.R. 405-6.)

11

## C.  Application, Appeal, and Hearing

On May 4, 2010, Plaintiff filed his application for
Supplemental Security Income (SSI), alleging a disability
onset date of April 30, 2010.[7]  That application was denied
on November 5, 2010.  With the assistance of counsel,
Plaintiff filed a request for reconsideration, which was
denied in April 2011.  Plaintiff then filed a timely request
for a hearing with an Administrative Law Judge (ALJ).

On January 10, 2012, Plaintiff appeared with counsel at
a hearing in front of the ALJ.  Plaintiff testified at the
hearing that he suffered from depression and anxiety.  (A.R.
96 & 105.)  He described feelings of occasional panic
attacks when out shopping, along with days when he felt
nervous and cried a lot.  Plaintiff also spoke of his

---

[7]  Plaintiff initially applied for disability insurance
benefits (DIB), alleging an onset date of June 26, 2003.
(A.R. 66.)  However, at the time of the hearing, he had
amended his disability onset date to April 30, 2010.  Such a
request to amend, as Plaintiff recognized, constituted a
request to withdraw his petition for hearing on his
application for DIB.  Accordingly, the ALJ dismissed that
request, pursuant to 20 C.F.R. § 404.957(a), and limited the
hearing before her solely to the issue of Plaintiff's SSI
claim.

insomnia and problems remembering things.  (A.R. 106.)

The vocational expert, Jeffrey Blank, Ph.D., testified
that Plaintiff's previous work experience would be
classified as unskilled and at either a sedentary or medium
exertional level.  (A.R. 111.)  Given certain restrictions
in exertion and movement, and with limitations to unskilled
positions with occasional interaction with the public, Dr.
Blank concluded that an individual with Plaintiff's age,
education, and past work experience could return to his past
work and perform other work as a small products assembler or
packer.  (A.R. 111-12.)  However, when the ALJ added the
limitation that Plaintiff might be absent more than three
days a month, the vocational expert stated that Plaintiff
could not return to past work and would be unable to perform
any other work.

On January 26, 2012, the ALJ issued an unfavorable
decision to Plaintiff, finding that he was not disabled.

D.  ALJ's Decision

The ALJ followed the five-step sequential disability
determination. 20 C.F.R. § 416.920.  At step one, she
determined that Plaintiff had not been engaged in

substantial gainful activity since May 4, 2010, the application date.  At step two, she found that Plaintiff had the severe impairments of HIV, hepatitis C, low back pain, post-traumatic stress disorder, and depressive disorder. (A.R. 69.)

At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal an entry on the List of Impairments, 20 C.F.R. § 416.920(d), -.925 & -.926. At step four, the ALJ found that Plaintiff had a residual functional capacity (RFC) to perform light work, except that Plaintiff would be

> limited to occasionally lifting twenty pounds and frequently lifting ten pounds from waist height, standing and walking four hours in a normal work day, and sitting six hours in a normal work day. He must avoid kneeling, crouching and crawling, but is able to occasionally climb and balance. [Plaintiff] must avoid exposure to hazards.  He is able to perform work that involves unskilled, simple 1-2 step, repetitive tasks.  He is able to perform work that involves low stress, defined as occasional decision making, occasional changes in the work setting, and occasional judgment required on the job. [Plaintiff] is limited to work that involves occasional interaction with the public.

(A.R. 71.)  Considering these limitations, the ALJ determined that Plaintiff was capable of returning to his

past work as a temporary worker, a sewer on a production line, and a warehouse worker.

Proceeding nonetheless to step five, the ALJ found that there were a significant number of jobs in the local and national economies that Plaintiff could perform, such as a small products assembler or a packer.  Thus, the ALJ determined that Plaintiff was not disabled.

On March 16, 2012, Plaintiff appealed this decision to the Appeals Counsel, which denied his request. Consequently, the ALJ's decision became final and subject to judicial review.

### III.  DISCUSSION

#### A.  Legal Standard

The Social Security Act sets forth the requirements for receiving disability insurance:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).  In applying this standard, the plaintiff "has the burden of showing a disability serious enough to prevent him from working at his former jobs, at which point the burden shifts to the [Commissioner] to show the existence of other jobs in the national economy that the [plaintiff] can nonetheless perform."  Vazquez v. Sec'y of Health & Human Servs., 683 F.2d 1, 2 (1st Cir. 1982).

In reviewing a decision by the Commissioner, the findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).  The court must defer to the Commissioner on the resolution of conflicts in the evidence and uphold the Commissioner's decision "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the] conclusion."  Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). Nonetheless, where the Commissioner has committed "a legal or factual error in evaluating a particular claim," the court must vacate and remand for further proceedings. Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (internal quotations omitted).

B.  **Analysis**

Plaintiff presents two challenges to the ALJ's
decision.  First, Plaintiff argues that the ALJ erred in
according Ms. Gressler, his treating clinician, little
credibility.[8]  Second, Plaintiff argues that the ALJ's
determination that Plaintiff could return to his prior work
was inconstant with her assessment of Plaintiff's RFC.
Neither, however, serves as a basis to overturn the ALJ's
decision.

It is true that, in determining Plaintiff's mental RFC,
the ALJ granted little weight to the opinions of Ms.
Gressler, Plaintiff's therapist.  The ALJ offered six
reasons for this, two of which Plaintiff challenges.
Plaintiff first asserts that the ALJ's rejection of Ms.
Gressler's opinion as a treating source on the sole basis
that the therapist is not an "acceptable medical source," 20
C.F.R. § 404.1513(a), was improper.  Technically, Plaintiff
is correct that an ALJ may not reject outright evidence from
therapist solely because it is not from an "acceptable

---

[8]  Plaintiff presents this general argument as two
separate, smaller arguments, however the court will treat it
as one.

17

medical source." See 20 C.F.R. §§ 404.1513 & 416.913(d)
(listing therapists among other medical sources from which
evidence of an impairment can come).

While an ALJ must give controlling weight to treating
sources who are acceptable medical sources (as long as the
opinion is well supported by the evidence), an ALJ may use
her discretion in assigning the weight to opinions of "other
medical sources." Taylor v. Astrue, 899 F. Supp. 2d 83, 87-
8 (D. Mass. 2012) (Neiman, M.J.).  In recognizing that Ms.
Gressler was not an acceptable medical source, the ALJ
merely provided the basis for why the therapist's opinion
was not entitled to controlling weight and, then, proceeded
to lay out the reasons why the opinion was deserving of
little weight.  Moreover, even if the ALJ were incorrect in
minimizing Ms. Gressler's opinions on this basis, there are
five other reasons shoring up the ALJ's decision to give Ms.
Gressler little weight.

With respect to those remaining five reasons, Plaintiff
objects to the ALJ's conclusion that Ms. Gressler's
assessment relied too heavily on Plaintiff's self-reporting
(which was inconsistent with the medical record), and to the

ALJ's conclusion that Ms. Gressler's opinion was contradicted by that of Ms. Hernandez. Plaintiff further contends that in citing discrepancies between Plaintiff's testimony of his limitations and the medical evidence, the ALJ failed to actually identify those inconsistencies.

These arguments are unpersuasive. To begin with, other than the intake form (A.R. 307), the initial treatment plan (A.R. 301), and the annual treatment plan update (A.R. 548), the only other medical records by Ms. Gressler are the three administrative forms she completed on behalf of Plaintiff for his applications for disability income. There are no notes or summaries of his twice-monthly visits with Ms. Gressler, nor are there any reports of any testing or other assessments Plaintiff might have undergone during his treatment. Thus, the ALJ had to look elsewhere in search of support for Ms. Gressler's conclusions.

Turning to the rest of the medical record, however, there is little support for Ms. Gressler's opinion about the severity of Plaintiff's impairments, as the ALJ noted in her thorough review of the evidence she considered. In the records of the eight medication management visits Plaintiff

had with Ms. Hernandez,[9] his symptoms were never rated stronger than "moderate"; his judgment, insight, and concentration were never worse than "fair"; and his speech, eye contact, and thought process were always deemed within normal limits.  (A.R. 380, 542-3, 546, 554, & 560)    This does not support Ms. Gressler's determination that Plaintiff had marked limitations in activities of daily living and maintaining social functioning -- a discrepancy caught by the ALJ.

Furthermore, the ALJ noted that the conclusions of the state agency consultants were consistent with Ms. Hernandez' assessments.  This included the in-person evaluation conducted by Dr. Hutt.[10]   Substantial evidence undermined

[9]   The court finds unpersuasive Plaintiff's argument that his visits with Ms. Hernandez were too short and sporadic to meet the "substantial evidence" threshold for upholding an ALJ's decision.  Plaintiff cites no authority for this proposition, and eight well-documented visits over a period of one year do constitute substantial contact.  Cf. Johnson v. Astrue, 597 F.3d 409, 411 (1st Cir. 2009) (remanding a case based, in part, on the ALJ's failure to explain why three visits, three months apart, was a basis to accord little weight to a treating source's opinion).

[10]   Though the ALJ considered Dr. Hutt's opinion, she did not accord it great weight because of internal inconsistencies: though Dr. Hutt gave Plaintiff a GAF score of 65, denoting mild symptoms or some difficulty in

both Plaintiff's description of his limitations and Ms.
Gressler's assessment.  The ALJ remarked on each of these
inconsistencies in her decision.  Though other minds may
have weighed these discrepancies differently, it is the
ALJ's task alone to resolve conflicts in the evidence.
Rodriguez, 647 F.2d at 222; Benetti v. Barnhart, 193 Fed.
App'x 6, 7 (1st Cir. 2006) (stating that the "ALJ's
resolution of evidentiary conflicts must be upheld if
supported by substantial evidence, even if contrary results
might have been tenable").

Finally, Plaintiff urges the court to remand his case
because the ALJ included warehouse work as a past job
Plaintiff could still perform despite an RFC limiting him to
light exertional work.  Defendant concedes that warehouse
work is, in fact, considered to be medium exertional work
and that including it was an error.  Nonetheless,
Plaintiff's other past work as a sewer falls within his RFC.

Moreover, even if the ALJ had concluded that Plaintiff

_____

functioning, and found him competent to manage his own
finances, Dr. Hutt also stated that he doubted Plaintiff
"could psychologically tolerate stressors associated with
work or employment."  (A.R. 346.)

could not return to his past work, at step five of the
analysis the ALJ identified the jobs of small products
assembler and packer -- both work that exists in significant
numbers in the local and national economy -- that Plaintiff
could perform with modest accommodation.  20 C.F.R. §
416.920(g).  Plaintiff does not challenge this finding.
There is no basis, therefore, for remand.  Ward v. Comm'r of
Social Security, 211 F.3d 652, 656 (1st Cir. 2000) (stating
that, even where there has been an error of law, "remand is
not essential if it will amount to no more than an empty
exercise").

IV.   CONCLUSION

This court, were it reviewing the case de novo, might
reach a conclusion different from the ALJ's.  But where
there is substantial evidence justifying the result that was
reached, as there was here, the court is obliged to affirm
her decision.  Ortiz Pagan v. Comm'r of Social Security, 84
Fed. App'x 106 (1st Cir. 2004) ("It was the Commissioner's
prerogative to weigh the evidence and resolve any
conflicts.").

For the foregoing reasons, Plaintiff's motion is DENIED
(Dkt. No. 17), and Defendant's motion is ALLOWED (Dkt. No.

25).  The clerk shall enter judgment for Defendant, and this case may now be closed.

It is So Ordered.

/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U. S. District Judge